Our next case for argument is 24-2296, Exafer v. Microsoft. Ms. Bernard, please proceed. Thank you, Your Honor. May it please the Court. This appeal turns on two legal errors at the 702 stage in the District Court that wiped out Exafer's damages expert opinion in its entirety. If we agree with you that Mr. Block's testimony should have been allowed, is that the only issue we have to reach in this case? Yes, that's correct, Your Honor. Why don't you focus on that? Okay. So, the first legal error that the District Court made in excluding Mr. Block's testimony is... Excuse me, Your Honor. If I understand, do you want me to focus on the exclusion of Mr. Block solely? Thank you. So, the first legal error the District Court made in excluding Mr. Block's testimony is that it applied a categorical rule that revenues from non-accused products can never be included in the royalty base for a reasonable royalty analysis. Exafer submits that it is not consistent with this Court's precedent. In Section 284's command, the damages be adequate to compensate for the infringement. So, from this Court's precedent, the foundational principle in a damages analysis is determining what was taken, the value of the use of the patented invention. In this case, Microsoft's use of the patented invention was its use of the VFP FastPath and SmartNIC technology. I want to ask you a question. I mean, we have some cases like NPLAS that have what sounds like, I suppose, a categorical rule that you cannot base damages on non-infringed products. And then we have maybe some other cases where there might be, you know, there's different alternative ways to measure damages, like a cost-savings approach or something like this. What would you say the rule is for when someone, a damages expert, can reasonably rely on or base the estimated reasonable royalty on a non-infringing product, sales of a non-infringing product? The rule that we would advance here is something similar to what this rule set forth in the Brumfield case, where it rejected a categorical rule that foreign conduct could not, that reasonable royalty damages could not be based on foreign conduct. So here, what we are trying to do is... It could, as long as there was an adequate causal connection between the infringement and the gain. That's correct. What Brumfield said was, you know, the foundational principles, this value of what was taken, we're trying to value the use of the patented invention. And when you're looking at hypothetical negotiation, you're trying to value how the parties will look at it at that time. And part of that analysis under Brumfield was taking a look at the relationship between the non-infringing activities and the infringing activities. And in Brumfield, this court found that when there's a causal relationship, and it gave a great example of what that means that is applicable here, when that infringing activity enables otherwise unavailable profits from, in that case, the foreign conduct... So the expert would have to have factual information to reasonably rely on. In order to satisfy Daubert, right?  And there also would have to be a correct methodology, right? I'm sorry. A correct methodology. They would have to have... You know, I think you're talking about methodology, really, maybe. And I think about Daubert, I think about that the expert has to be able to rely on... There has to be some basis factually to support what the expert is saying. And also, they have to have a proper methodology, right? I agree with you 100%. Under Rule 702, there's methodology and there's sufficient facts or data. So he would have to have any expert, damage expert, to meet this threshold that we're talking about in Brumfield, would have to have evidence. Evidence of an economic nexus, this causal relationship between the non-infringing activities and infringement. And so Mr. Block was trying to testify, if I understand it right, that the VFP CPUs, which are the patented and claimed device, resulted in a substantial... I won't give the number because I know that it's confidential, but a substantial increase in VM hour production. Because basically, the patentee invented something that made stuff work a lot faster. And so he's figuring, how do you value that? It's not a standalone product, doesn't sell, so he valued it by looking at how many hours were ultimately produced, right? That is 100% correct. As he put it in his, the but four hours. So you have the VFP fast path, and you have the SmartNIC technology, and when Microsoft, at the time of the hypothetical negotiation, was implementing this technology into its Azure cloud system. And it was Microsoft's own documents that established the improvement that this technology would provide in VM hours, correct? That is 100% correct, Your Honor. We've laid that out in the brief, and that was not disputed. Do you want to save time for rebuttal? Okay, thank you, Your Honor. Oh wait, could I ask you a quick housekeeping question? I'm sorry. A lot of things in Mr. Block's report are designated as confidential, and some of them probably are still confidential, but others seem like, why are these being indicated as confidential? For example, in page A1226, it appears that a factor from Georgia Pacific is designated as confidential. Has there been any review of these kinds of things, and what's confidential and what's not, to try to narrow it down so the court can do its job? There was at some point in this briefing that the court came back and asked Microsoft to designate, because Mr. Block's report obviously is mostly Microsoft's confidential information. So we had them take a look at it. I believe in the appendix, most of it was still marked confidential as it was in the underlying report. I mean, the sentence I'm talking about says in Georgia Pacific, the court held that determination of reasonable royalties. Maybe I shouldn't read this. But it goes on, and it says what the Georgia Pacific court held, and so I'm wondering why that's designated as confidential. I agree with you. That should not be confidential. We're happy to work with Microsoft and try to get some of that cleaned up for the court so you know, for your opinion, what is confidential. Don't we still have a rule, maybe even in FRAP itself, that requires the parties to get together to review over-marking of material as confidential? And we did, and that did happen earlier on in this case. It might be worth a second shot with respect to the actual report. Certainly, Your Honor. We will definitely work with Microsoft to take a look more through the appendix and make sure that we do designate some of that so the court can have that information for its opinion. Thank you very much. Okay. Ms. Hunsaker? Thank you, Your Honor. May it please the court, Kelly Hunsaker on behalf of Microsoft. Exefer lost this case because it made a series of deliberate choices in a singular pursuit of an ultimately invalid damages theory. In doing so, it abandoned alternative approaches and left the record with no evidence, no methodology, and no roadmap from which a jury could determine a non-speculative, non-zero royalty. With its only damages theory excluded, Why don't you just stick at what? Supporting the first part. If we disagree with the first part, we don't need to get to the second part. With respect to the second part? With what you were about to say, that without anything else, then the judge can end the case. Forget about that for now and just talk about why you think the exclusion of his testimony was proper. Yes, Your Honor. With respect to categorical rules versus alternate ways of calculating damages, the idea that unpatented products may not be part of a royalty base in a running royalty, a usage-based royalty, goes all the way back to Garrison v. Clark. These are method claims, right? There are method claims and there are system claims. What would be an unpatented product in a method claim? Virtual networks are a separate product. Azure has 200 different products and services. Virtual networks are a separate product. VFP lives entirely in virtual networks. The source code for VFP is entirely in virtual networks. When you say virtual networks, you're talking about a name with a capital V and a capital N, not common language words. It's a category of products. There's actually four different types of virtual networks, but it's a category of products. It's a different line of business than the compute group, which is where virtual machines live. Just get back to the affirmative. My understanding is Mr. Block said that as a result of the practicing of this method, Microsoft was able to sell many more hours and he's trying to just figure, and then he made an estimate of the incurrent of the additional hours of the thing that actually Microsoft gets money for and then figured out what the profit level was on that and then allocated that profit between the two parties. Then, sort of at the end, he said, I'll just translate that into a base and a per unit. Why is that not reasonable and economically sound? Because all that Mr. Congdon did and all that Mr. Block did in his damages series was show a functional relationship between a computer and a network. If this isn't the virtual world, we're talking about a computer as the virtual machine and a whole network as the virtual networks. When you say all, Mr. Congdon's testimony was not strong and his testimony was that the VFP fast path provided X, because I'm not going to say the number, improvement in VFP CPUs, which is directly correlated to the increase in VM hours. If you have a method of manufacturing and it results in you producing, I'll just say a random number, 20% more product in an hour, why can't the measure of damages be focused on the additional products that were produced? Because, Your Honor, unless the entire market value rule applies, unless the patented feature drives customer demand for the whole system that you're drawing the circle around... It actually said how many additional VM hours it thought it would achieve by utilizing this exact product. It actually did not, Your Honor. What it said was it anticipated a 50% increase... That's the number you're not supposed to say. That's the confidential number. That's why we keep saying X. I apologize. We can... We want to answer the confident... We want to answer the housekeeping question and tell us that nothing in here is confidential? The vast majority of it is we can de-designate. I thought we redacted very lightly. It makes it very hard for us to have a conversation with you when you're able to say it out loud because you know what's confidential and what's not, yet we can't. Could you tell us what is confidential and what's not? You can assume it's not confidential for purposes of this argument. Okay, so does that mean nothing's confidential for purposes of this argument? Your Honor, a lot of this dates back 15 years, and so when we went back and did the redactions... Just a conclusive, clear answer would be really helpful. Yes, I believe you can speak to anything in the record. Okay. All right. Well, okay, so let's get back to the merits of the point then. Microsoft documents suggested a potential... Or at least Dr. Congdon testified that there would be a 50% improvement in VFP CPUs, which can directly correlate to an increase in the number of VM hours on the Azure platform. And completely conclusory, there is no substance, there is no evidence, there is no basis for that correlation. That's not the issue. The issue here, that expert was not excluded, and you have not challenged on appeal the failure to exclude that testimony. That is a factual statement that you have not challenged on appeal. Okay. So why is it wrong for Mr. Block to accept that factual statement, which is not challenged on appeal, as true, and then base his methodology the way he did? Because these are different products. One of those products is a network. One of those products is a computer. And under the rule of apportionment... You don't sell the computer. You don't sell one of those things. I mean, how else would they value their invention? You're just complaining about the methodology, right? I mean, you have to agree that there is a factual premise here on the record. You're just saying even if there is a factual premise for valuing the invention this way, that it's per se improper to do so. I believe it is per se improper to use an unpatented, unaccused product as a royalty base in a running royalty. What the case law says is that you can consider it. You can consider it in the rate. You can consider it in the Georgia-Pacific factors. But what you can't do is create a tax, a running royalty on an unpatented product. I guess my recollection, and just correct me, is that Dr. Block kind of ended up phrasing his dollar amount as of the close of the damages period that was subject to discovery, which is 2020. He did a calculation on overall quantities and then translated that, I think their term was, expressed it as, say, a running royalty. But it was a fixed dollar amount. We don't have a running royalty in front of us. We do. His royalty was a 2.5 cent per virtual machine hour running royalty. Because he just took the total numbers and did a division at the end after justifying the analysis in terms of the total numbers. He took the total virtual machine revenues. He divided them by the average selling price of virtual machine hours to arrive at a number of virtual machines. Then he assumed that 50 to 100 percent of those virtual machine hours were attributable solely to the patent in suit. That was how he arrived at the number. And that is based on a running royalty for a product that is not accused of infringement. In every case, you have to separate the patented and unpatented components. And he did not do that. Virtual machines don't infringe by using another component. How do you do that for method claims? What is the product in a method claim? Virtual networks. It's sold by Microsoft. The only thing that's not sold is the VFP component of virtual networks. Forget about this case. A method of manufacturing. Are you saying that it would be improper? Just a regular method of manufacturing, it would be improper to use the product produced by that method in order to assess a royalty? It's not a product produced by the method. But I'm asking you as a matter of law. In a simple case, method of manufacturing results in a single product. Do you think a damages expert could not use that product for its royalty analysis? It's not a method of manufacturing. So the end result... You're fighting a hypothetical. Please don't fight a hypothetical. Okay, good. May I ask you to clarify the question, please? How do you... I'm trying to get to... What I'm trying to point out to you is there are many instances in which the measure of damages, the royalty base, is on something that is not necessarily the claim thing because in a method of manufacturing, you can't do that. In a method of manufacturing, you have to put the royalty base on the product produced by the method, which may not itself be patented, the product. So there are instances when an expert can look to, for a royalty base, a product that is the product of a method and then use the number of products produced by that method as the royalty base. And I'm kind of wondering, do you think there's something wrong with that, theoretically? Because you want a per se rule, but I don't see how a per se rule applies when there are method claims. A per se rule applies to apply the rule of apportionment. You have to tie the award of damages to the infringement. What infringes is the claims. Those claims reside in a different product that is sold by the Networking Services Division. It's not the virtual machines. It's not the virtual machines that include it. If you ask for the source code of virtual machines, you will find VFP nowhere. If you ask for the source code for virtual networks, that's where it lives. That product is sold. It's sold in four different implementations. Dr. Congdon examined all of those. And instead of relying on the small assailable patent practicing unit, which this court's cases say is required, they didn't look to networking services revenue because it was too small. I see your briefing as really emphasizing N-Class and other cases and advocating for a per se rule that there can never be a royalty award provided based on a non-infringing product, even when it's a method claim. That's what I see you're saying. I don't see a lot of emphasis on apportionment, like the argument you're making right now. And I'm not sure if I agree with you there wasn't apportionment here anyway. That's a separate issue. But tell me where you're talking about apportionment in your brief. In the sense of apportioning a single product between patented and unpatented components, we're not suggesting apportionment in that respect. With respect to the concept of not using unpatented products as the royalty base, doctrinally, we believe that that comes from 140 years of case law. And we believe that that's inherent in Section 284. Sure. Now, can I go back to Chief Judge Moore's hypothetical? I don't know if I heard you answer that, but you are aware of cases that say where damages have been awarded on method claims when those method claims are based on the product that is produced, right? If the method claims are being infringed by a user, that user is using the virtual network. That user isn't using the virtual machine. So the user... You're not going to answer the question. My question was, do you agree that there's cases, or hypothetically, somebody who, a party that manufactures, uses a method to manufacture a product, that there could be a royalty based on the sales of the product? So, Your Honor, I do understand the question. EXIFR did not come forward with any cases in that hypothetical. They did not demonstrate that... So you just don't know the answer to the question. I don't know the answer to the question. It's not a method of manufacture. Conceptually, you're telling me that doctrinally... That's all right. You can move on. Okay. If there's no further questions regarding the exclusion order, I'd like to turn to the summary judgment. With EXIFR's only damages theory excluded, the question is, what was left? And was there enough evidence in the summary judgment record for a jury to determine a reasonable royalty award without speculation and guesswork? And in the summary judgment record, there was no way... There was no way for any jury to arrive at a damages number. There was no structure to a royalty. There was no methodology, no base, no rate. Absolutely no way for a jury to formulate a reasonable royalty based on the evidence. And under a plain application of Rule 56, we think that granting summary judgment was the only choice that the district court had based on the court's case law. Okay. Thank you, Mr. McBecker. Mr. Bernard, you have some rebuttal time. Thank you, Your Honor. EXIFR doesn't have anything more to add on rebuttal unless you have some additional questions. You just heard your friend on the other side, or at least I think I heard, say that the claimed method is not used in the manufacture of what Microsoft sells, VM time, if that... That may not be the correct description, but the thing that it sells, sort of timeshare on their servers for something. Is that right, wrong, what? The use of the patented invention by Microsoft is the VFP FastPath and SmartNet technology. And what that technology does is it adds efficiencies to the networking. So it's how it processes the data that's going through the network. And those efficiencies are cost savings in the number of CPUs that are used for networking in a server. And so that's the direct correlation between the cost savings and then the value of those cost savings per Microsoft's own contemporary business documents in 2014. That value was measured by the additional VMs that you could add per server, leading to VM hours used by the customers and then leading to revenue. So it's a slightly more complicated causal connection than saying, I have a method for making ketchup. Put the tomatoes in first and then the sugar, and boy, it goes a lot faster and we can now make lots more ketchup. Perhaps, but we submit it is a really direct economic nexus and causal relationship between the use of the patented invention, which is what we're trying to get damages for here, nothing more, and the extra VMs that are put on a server and the resultant extra VM hours from the customers. All right, thank you, counsel. This case is taken under submission.